**SOUTHERN STATES DEVELOPMENT COMPANY, INC., et al., Plaintiffs-Appellants-Appellees,**

v.

**Forrest ROBINSON et al., Defendants-Appellants-Appellees,**

**Milan Soybean and Elevator Company et al., Intervenors-Appellees.**

Court of Appeals of Tennessee, Western Section.

Nov. 1, 1972.

Certiorari Denied by Supreme Court May 7, 1973.

Lloyd S. Adams, Jr. and James T. Ryal, Jr., of Adams & Albright, Humboldt, for plaintiffs-appellants-appellees, Southern States Development Co., Inc. and others.

John F. Kizer, Milan, for defendants-appellants-appellees, Forrest Robinson and others, and for intervenors-appellees, Milan Soybean and Elevator Co.

Jerry R. Maxwell, Dyer, for intervenors-appellees, Carey Salt Co., and others.

NEARN, Judge.

Southern States Development Company, Inc. and Central Soya Company, Inc. filed a complaint in the Law and Equity Court of Gibson County, charging the defendants Robinson and Cox with fraud and deceit in the procurement of a loan from plaintiffs to James K. Morris and Glenda Morris for the benefit of Robinson and Cox. Defendants Robinson and Cox as well as James K. Morris et ux. filed Cross-Claims against the plaintiffs. Milan Soybean and Elevator Company, Carey Salt Company, Boyd Price, d/b/a Boyd Price Grain Company and H. S. Mitchell, d/b/a Blue Ribbon Milling Company were permitted to intervene as creditors of James K. Morris.

Southern States Development Company, Inc. is the wholly owned subsidiary of Central Soya Company. One entity handles the sales end of the business and the other entity furnishes financing to the buyer. Both of these corporate entities will hereafter be referred to simply as plaintiff. Defendants Robinson and Cox will be referred to as defendants or by their proper names. Defendants James K. Morris and Glenda D. Morris will be referred to by name or as Morris et ux. Milan Soybean and Elevator Company, Carey Salt Company, Boyd Price, d/b/a Boyd Price Grain Company and H. S. Mitchell, d/b/a Blue Ribbon Milling Company will be referred to collectively as intervenors.

After a full hearing, the Trial Court found in favor of the plaintiff on the issue of fraud and, *inter alia*, (a) reformed plaintiff's security instrument to include certain lands claimed by Robinson and Cox, (b) awarded judgment against Morris et ux. for the balance owed on the loan held by plaintiff, (c) awarded intervenors judgment for their claims against Morris et ux. and the plaintiff and (d) denied recovery to Robinson and Cox and Morris et ux. on their Cross-Claims.

Plaintiff and the defendants Robinson and Cox are dissatisfied with the Decree of the Trial Court and have appealed. Morris et ux. have not appealed. None of the intervenors have appealed, but the intervenors, as well as the defendants Robinson and Cox, have filed motions to dismiss plaintiff's appeal on the grounds that the appeal bond is not proper.

We will first consider the motions to dismiss the Appeal.

The motions allege that the original appeal bond is in the amount of only $250.-00 and is not for the judgment amount rendered in favor of intervenors against plaintiff as required by T.C.A. § 27–315. Our examination of the record reveals that

the allegations of the movants are correct. It must be admitted that the bond as originally filed is improper. However, after the motions were filed and prior to the arguments of this case, the plaintiff has filed the proper bond and filed its petition with this Court praying that we hear the matter as on a Writ of Error.

The entire record is now before us, briefs have been filed and arguments made. A proper bond has now been filed which secures the movants. We have not been advised of any, nor can we foresee any prejudice that will come to the movants if we now treat this matter as on a Writ of Error. We therefore overrule the motion and will consider all Assignments of Errors filed by the parties. See City of Paris v. Browning (1965 W.S.) 55 Tenn. App. 104, 396 S.W.2d 372.

Robinson and Cox moved the Trial Court for a dismissal at the close of plaintiff's proof and at the close of other defendants' proof, which motion was overruled. Defendants have elected to stand on the motion without any offer of proof on their part.

Counsel for defendants Robinson and Cox have filed five Assignments of Error with this Court. The first four Assignments seek to avoid the Judgment of the Chancellor on the grounds of (a) lack of privity between the parties, (b) violation of the parol evidence rule, (c) the defense of the Statute of Frauds, and (d) that if either (a), (b) or (c) is sustained there would then be no proof to support the Judgment.

█ The fifth Assignment of Error is that the Trial Court erred in failing to grant Robinson and Cox recovery for loss of rent resulting from the attachment and injunction ordered by the Chancellor at the commencement of the suit. This Assignment of Error is respectfully overruled. Neither of these defendants took the stand to defend against the charges raised against them nor to prosecute their claim for alleged loss of rents. Therefore, there is no proof of such loss. Furthermore, no argument is found in the brief which is addressed to the fifth Assignment of Error.

The proof considered by the Chancellor shows that without a doubt the following occurred:

Prior to November of 1967, Robinson and Cox were partners engaged in the milling business under the firm name of Milan Milling Company. In the main, the building facilities of the business consisted of the mill, offices and warehouses. These facilities were located on lands owned by the partners. The land was acquired by the partners in two parcels. The first parcel, hereinafter referred to as Parcel I, was acquired in 1950. On Parcel I was located the mill, office and a small warehouse. The second parcel, hereinafter referred to as Parcel II, was acquired by the partners in 1963 and is contiguous with Parcel I. On Parcel II is located a large metal warehouse.

Late in 1967, Robinson and Cox agreed to convey the Milan Milling Company to James K. Morris. This agreement was evidenced by a lease-purchase agreement which provided for the leasing of all of Milan Milling Company property to Morris and granted an option to him to purchase all of Milan Milling Company within twelve (12) months from the commencement of the lease at a price of $62,500.00.

Morris was unable to exercise the purchase option in the time specified, but he continued to operate the mill on what he considered to be a month-to-month basis.

Although the lease-purchase agreement had expired, Morris still desired to purchase the Milan Milling Company. However, he did not have sufficient finances to accomplish his desire.

Plaintiff desired an outlet for its feed products known as Master Mix Feeds as well as warehousing facilities. Contacts were made between plaintiff and Morris. As a result of these contacts and discus-

sions, agents for plaintiff contacted Robinson to see if arrangements could be made for Morris to purchase Milan Milling Company. It was agreed that Morris would purchase Milan Milling Company for $50,000.00. Of that sum $35,000.00 would be furnished by plaintiff secured by a note and first mortgage on Milan Milling Company property. It was further agreed that Robinson and Cox were to carry a second mortgage to secure the balance owed to them of $15,000.00.

For many years prior to this time, plaintiff and Robinson and Cox had done business together and as a result of these dealings plaintiff placed its confidence and trust in Robinson and Cox. Therefore, plaintiff requested that Robinson furnish a title report on the Milan Milling Company which would be used for the closing of the .deal. Robinson furnished the legal description of Parcel I only to his title attorney and requested that the title to that land only be examined. The report was furnished and in turn delivered to plaintiff. The Warranty Deed to Morris and the Trust Deed securing plaintiff's loan was prepared on that title report. Secretly, Robinson had drafted a Warranty Deed to Morris et ux. covering Parcel II which provided for a vendor's lien retained by grantors in the amount of $15,000.00. This secret deed was not delivered to Morris at the closing and no one knew of its existence until Morris became in default on the $35,000.00 note to plaintiff. Morris first became aware of its existence, when, after default on plaintiff's note, Robinson offered to deliver the deed to him at a discount. Plaintiff did not learn of the existence of it until after Morris was in default.

Plaintiff and Morris both thought that all of Milan Milling Company had been conveyed to Morris and that plaintiff was secured by a first mortgage on all of Milan Milling Company property.

The principal obstacle against the Chancellor's Judgment raised by counsel for Robinson and Cox is the Statute of Frauds. T.C.A. § 23–201 provides that no action shall be brought upon any contract for the sale of lands unless the promise or agreement, upon which the action is brought, or some memorandum or note thereof, be in writing.

It is argued that there is no written, valid evidence of any promise to convey Parcel II to Morris; that any such evidence in this record is by parol only. Further, that the lease-purchase agreement which did contain the description of both parcels admittedly had expired by its terms and could not be considered to be a written memorandum of a new sale in order to take this matter outside the Statute.

This argument is countered by counsel for plaintiff with the argument that the Statute requires only a written memorandum signed by the party to be charged and that the lease-purchase agreement constitutes a written memorandum that all parties knew or thought they were dealing with all the Milan Milling Company property. In addition, the Deeds executed by Robinson and Cox, including the secret undelivered Deed, satisfy the Statute. Further, that the fraud perpetrated by Robinson and Cox is of the character which takes the case from within the Statute.

In equity cases, Tennessee has always recognized that frauds of a certain character will be relieved against even in face of the Statute. This is so because the mind of man is infinite in its contrivances. No matter what laws are written for the purpose of preventing frauds, in time, man will discover some way to use the very law established to prevent frauds to protect one. Equity abhors fraud to such extent that new rules will be created or new exceptions to old rules will be announced, if there is no other way to prevent the reward of a fraud caused by a new and different scheme perpetrated for the same old end. However, no new rule or new exception to an old rule need be promulgated to take this case out of the Statute. In our opinion, this case falls squarely within the

exception to the Statute as expressed by the Supreme Court of this state in 1847 in the case of Hackney v. Hackney, 27 Tenn. (8 Humphreys) 452.

In the *Hackney* case, supra, in discussing the type of fraud which takes the case out of the statute, the Court stated:

"the fraud spoken of which will take a case from within the operation of the statute of frauds and perjuries is not fraud in making the promise with no intention of complying with it; but a fraud by which the reduction of it to writing is prevented, the parties so intending; and the complaining party being induced to believe that it has been done, and this fraud may be perpetrated in two ways—*one by signing a false paper, at the time inducing the belief that it is the true one,* and the other by inducing the belief that the paper had been signed when in fact it had not." (emphasis ours)

The uncontradicted proof in this case is that all the parties intended to convey all of Milan Milling Company to Morris and that plaintiff would have a first mortgage thereon. The defendant Cox, when called for cross-examination purposes pursuant to Rule 43.02 T.R.C.P., testified that he left all the details of the sale to his partner Robinson and that he, Cox, did not know that only one of the Parcels had been conveyed to Morris and did not learn of the fact until after default by Morris. Robinson, by ordering a title search on only one parcel created a false Warranty Deed and caused to be created a false Trust Deed. Robinson knew of the falsity of both instruments at the time of the conveyance. Why else would he secretly prepare another Deed, the existence of which was not even known by the grantees?

It is abundantly clear from the proof that Robinson, on behalf of Robinson and Cox, created, and caused to be signed false papers while inducing Morris and plaintiff to believe that it was the true one conveying all of Milan Milling Company when, in fact, it was not.

In addition, we are of the opinion that the Deeds executed by Robinson and Cox are sufficient written memorandum to take this case out of the Statute of Frauds. An undelivered deed can constitute a sufficient memorandum of a parol contract for sale of land. Radiophone Broadcasting Station v. Imboden (1946) 183 Tenn. 215, 191 S.W.2d 535.

We hold the Statute of Frauds is not applicable to this case.

The application of the Statute of Frauds prevents the proving of an oral contract to sell land, but once the objection of the Statute has been met, either by a written memorandum or an exception to the Statute, the entire contract may be explained and proved by parol evidence. Therefore, Assignments of Error made to the fact that the Trial Court allowed parol evidence are overruled.

Counsel for Robinson and Cox also complain of lack of privity between plaintiff and themselves. We hold there is privity. The proof shows that plaintiff and Robinson and Cox agreed that the Milan Milling Company would be sold to Morris for the sum of $50,000.00 of which sum plaintiff was to furnish $35,000.00 to be secured by a first mortgage on all the Milan Milling Company property. Plaintiff trusted Robinson to furnish a title certificate on the agreed upon land. Robinson agreed to do so, but he failed to do so and deceived plaintiff. This is privity. Even if technical privity were not present, such would not be required in this case, for when a party misrepresents a fact knowing that such misrepresentation is to be relied upon by another, he is liable to such other party for the loss caused by such reliance even in the absence of a contractual relationship between the misrepresentor and the one who has relied upon the fact. Tartera v. Palumbo (1970) 224 Tenn. 262, 453 S.W.2d 780. Also, see and compare Hunt v. Walker (1971 W.S.) Tenn.App., 483 S.W.2d 732.

It results that all Assignments of Error of Robinson and Cox are overruled.

Plaintiff's single Assignment of Error is that the Chancellor erred in holding plaintiff jointly liable with Morris for certain indebtednesses owed to the intervenors.

■ We have not heretofore mentioned it, but when the purchase of Milan Milling Company was financed by plaintiffs, they also extended to Morris a $10,000.00 line of credit for the purchase of Central Soya products, secured by a security interest in inventory, accounts receivable, etc. Morris was delinquent on his line of credit as well as the mortgage payments. In order to protect itself in what it correctly believed to be the impending failure of Milan Milling Company, plaintiff, as permitted in the security agreement, took over the operation of the plant.

The Chancellor, in this findings of facts described this facet of the proof as follows:

"The Court further finds that after Central Soya and its agents came upon the property of Milan Milling Company for the purpose of protecting their indebtedness with Morris and wife, an account had been created, or was created during this time, wherein the merchandise of Boyd Price, doing business as Boyd Price Grain Company, was disposed of; that H. S. Mitchell, doing business as Blue Ribbon Milling Company, was due an account during this period from Milan Milling Company, the joint control of which was with Central Soya and the Morrises; and the Court further finds that a bailment relationship between Milan Soybean and Elevator Company, Inc. was in existence at this time with Milan Milling Company, whereby an obligation was due and owing to Milan Soybean and Elevator Company for the amount of merchandise held during the time the agents of Central Soya were on the premises protecting their interest."

The Chancellor held plaintiff liable along with Morris for the inventory used, bought, sold or disposed of while plaintiff was in effect operating Milan Milling Company. The intervenors are unpaid creditors who dealt with Milan Milling Company during the period of plaintiff's operation of same. We also concur in the finding of facts of the Chancellor on this issue. We are cited to no law and know of none which would prevent the plaintiff from being liable for the debts of the business incurred while plaintiff was operating it or for fungible goods of others which were used or misused during the period of operation by plaintiff.

Therefore, plaintiff's Assignment of Error is overruled.

Since we concur in all of the Chancellor's finding of fact, find no error in the application of the law, and have overruled all Assignments of Error we find that the Judgment below is the one which the law, equity, good conscience and justice demanded and is in all things affirmed.

CARNEY, P. J. and MATHERNE, J., concur.