Kenneth JARRETT, Plaintiff–Appellee,

v.

Harrison EPPERLY and Epperly Inc., f/k/a United Brake Systems, Inc., Defendants–Appellants.

No. 88–5762.

United States Court of Appeals, Sixth Circuit.

Argued July 31, 1989.

Decided Feb. 23, 1990.

Rehearing and Rehearing En Banc Denied April 12, 1990.

Alan Mark Turk (argued), Prince & Turk, Nashville, Tenn., George W. Hopper, Hopper & Associates, Indianapolis, Ind., for plaintiff-appellee.

Mark Dyer, Peter H. Curry, Boult, Cummings, Conners & Berry, Nashville, Tenn., Gene R. Leeuw, Dean T. Barnhard (argued), Klineman, Rose, Wolf & Wallack, Indianapolis, Ind., for defendant-appellant.

Before WELLFORD and NELSON, Circuit Judges; and TAYLOR, District Judge.[*]

ANNA DIGGS TAYLOR, District Judge.

This Tennessee breach of contract and fraud case is before us on Defendant's appeal of a general jury verdict in Plaintiff's favor, awarding compensatory damages in the amount of Seven Hundred Thousand Seven Hundred Dollars ($700,700.00) and punitive damages of One Hundred Twelve Thousand Dollars ($112,000.00). Defendants assert several claims of error on appeal, none of which have merit.

## I. FACTS AND PROCEEDINGS BELOW

Defendant–Appellant Harrison Epperly approached Plaintiff–Appellee Kenneth Jarrett in April, 1976 and asked Jarrett to come to work for him. Epperly, who operated a brake shop in Indianapolis, Indiana, sought to open a second shop in Nashville, Tennessee, in the name of United Brake Systems Corporation, of which he, his spouse and his father were the sole shareholders. He was the president and controlled the day-to-day operations of the corporation. At the time Epperly approached Jarrett, Jarrett was happily employed as a salesman of truck leases with Transport Pool of Nashville, at a salary of $9,000.00 per annum, as well as commissions and an expense account.

Epperly asked Jarrett to set up, open and manage a Nashville branch of United Brake, and offered him $9,100 per annum with commissions, an expense account and the use of an automobile. When Jarrett advised that he was happy with his present position, Epperly made the further offer that, if the Nashville branch were not profitable after six months, it would be closed and Jarrett would be given an additional six months of severance pay. Epperly finally offered to make Jarrett a forty-nine percent owner of the branch if he would take the job and continuously manage it for ten years.

Jarrett accepted this offer, basing his acceptance in large part upon the promise of eventual ownership. He opened the Nashville branch in the spring of 1976. The agreement between the parties was never put into writing. Both parties later testified that their relationship had been "like father and son."

In an effort to induce others to open and manage still more branches, Epperly made the same promise to several; the promise of eventual forty-nine percent ownership in their branch. In addition, he told several of his employees, over the years, that he had such an oral agreement with Jarrett and, over the course of the next ten years, he continually reassured Jarrett that he would become a forty-nine percent owner when his ten year anniversary arrived.

During his decade with United, Jarrett was offered other positions and business opportunities elsewhere, all of which he refused, because of this opportunity to become a part owner of United's Nashville branch. Also during this period, the company grew from two to twenty-three branches, with Jarrett assisting in the opening and management of several new branches. Indeed, Jarrett's responsibilities increased greatly over the decade.

On or about the tenth anniversary of his employment, Jarrett approached Epperly, requesting performance of the oral promise. Epperly acknowledged the promise and informed Jarrett that he would, by the end of 1986, receive evidence of his forty-nine percent interest in the Nashville operation.

Unfortunately, on December 30, 1986, Epperly sold the assets of United, including all of the assets of the Nashville operation, to Echlin, Inc., for about Eleven Million One Hundred Twenty Eight Thousand Eight Hundred Forty Two Dollars ($11,128,842.00).

[*] The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

Even after the sale, Jarrett again approached Epperly who, in January, 1987, promised Jarrett that he would receive that portion of the sales price corresponding to his forty-nine percent interest in the Nashville operation. No such payment was ever made. In fact, when another employee asked Epperly about his promise to Jarrett, Epperly replied "Forty-nine percent of what? Of nothing?"

Jarrett filed suit in the United States District Court for the Middle District of Tennessee seeking, in his first complaint, damages for breach of an oral employment contract and for promissory fraud. Shortly before trial, Defendant moved for summary judgment, and the magistrate recommended partial summary judgment for Defendant. The trial judge refused, however, to rule on the summary judgment motion at that time. Moreover, at the final pre-trial conference, the parties were unable to agree on a pre-trial order, due to Jarrett's request that it include claims for fraud and deceit, constructive fraud and fraudulent concealment, which he asserted would be proven at trial. He also submitted an amended complaint which included these new theories. The district court chose to take the matter under advisement pending the close of the evidence at trial.

After a six day trial, the court charged the jury as to breach of contract, fraud, fraudulent concealment and promissory fraud, and refused Defendants' request that the jury be given special interrogatories. In addition, after trial the court denied Defendants' motion for summary judgment. This appeal followed.

## II. DENIAL OF APPELLANTS' MOTION FOR SUMMARY JUDGMENT

■ Appellants challenge the trial court's denial of their motion for summary judgment. In so doing, they rely upon the magistrate's report, which recommended partial summary judgment in their favor. Any issue as to the magistrate's report however, is mooted here by the district court's *de novo* determination that genuine issues of fact existed, precluding summary judgment and requiring trial. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

■ Whether a denial of a motion for summary judgment is appealable following a jury verdict adverse to the movant appears to be an issue of first impression in this circuit. The better rule appears to have been recently adopted by the Ninth and Federal Circuits and is that such a denial is "not properly reviewable on an appeal from the final judgment entered after trial." *Locricchio v. Legal Services Corp.*, 833 F.2d 1352 (9th Cir.1987); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir.1986), *cert. dismissed*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987); *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661 (Fed.Cir.1986). We agree with the Ninth and Federal Circuits and here hold that where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed.[1]

---

1. We recognize that decisions in this circuit generally state that interlocutory orders merge into the final judgment and may be presented on appeal of that final judgment, but we find no case which deals specifically with the appealability of a denial of summary judgment after a full trial on the merits. Hence, we find persuasive the court's reasoning in *Locricchio, supra* at 1359 that: "To be sure, the party moving for summary judgment suffers an injustice if his motion is improperly denied. This is true even if the jury decides in his favor. The injustice arguably is greater when the verdict goes against him. However, we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial. After considerable research, we have found no case in which a jury verdict was overturned because summary judgment had been improperly denied. We hold, therefore, that the denial of a motion for summary judgment is not reviewable on an appeal from a final judgment entered after a full trial on the merits." *See also Holley v. Northrop Worldwide Aircraft Services*, 835 F.2d 1375 (11th Cir.1988).

### III.  STANDARD OF REVIEW OF JURY VERDICTS

■ In *Gold v. National Savings Bank of City of Albany*, 641 F.2d 430, 434 (6th Cir.1981), this Court acknowledged that it is bound by state law with regard to sufficiency of the evidence in diversity cases:

In Tennessee, the rule of law with respect to appellate review of the sufficiency of evidence is that all the evidence for the prevailing party must be taken as true.  Moreover, all reasonable inferences favorable to the prevailing party must be made and all countervailing evidence must be disregarded.  However, it is also clear that under Tennessee law there must be substantial and material evidence from which the jury could have based a verdict for the prevailing side. [Citations omitted].

In this case, we find that as to all jury issues raised by Defendants, the jury had substantial and material evidence on which to base its verdict for Jarrett.

### IV.  STATUTE OF FRAUDS

■ Defendants contend that the Statute of Frauds barred enforcement of the oral agreement between these parties because real estate was "embedded" in the agreement and because the promises were incapable of performance within one year.

The Tennessee Statute of Frauds, Tenn. Code Ann. § 29–2–101 states:

Writing required for action—No action shall be brought:

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; or,

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making thereof;

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

We reject Defendants' argument that the above provisions bar Plaintiff's claims. The Nashville branch of United did not own real estate in 1976, when Epperly made the promise of forty-nine percent ownership to Jarrett.  Therefore, the contract, when made, did not concern real estate and thus was not within the Statute of Frauds. There is no evidence, in fact, that real estate *ever* became embedded in the contract, which was for 49% of the ownership of an establishment putatively incorporated by Epperly.

Plaintiff Jarrett's complaint does not allege that there was ever a contract for the sale of real estate.  What the plaintiff is suing on, rather, is a contract for 49% of an operating business consistently identified in the pleadings as the "Nashville operation."  It was understood that the Nashville operation included real estate, to be sure, along with inventory, equipment, accounts receivable and goodwill, but there was no understanding that the defendant corporation had to own the real estate rather than leasing it.  If the business had never switched from leasing to owning, plaintiff would have had no ground for complaint as long as he received 49% of the business.  And if the Nashville operation had been separately incorporated, with plaintiff taking his 49% through a conveyance of corporate stock, the fact that no real estate changed hands would have made no difference in any event.

■ We also disagree with Appellants assertion that the contract could not be performed within one year.  In *Price v. Mercury Supply Co.*, 682 S.W.2d 924 (Tenn.Ct.App.1984), the Court found that Tenn.Code Ann. § 29–2–101(5) should be narrowly construed and further held:

... Mr. Price himself stated that the terms of this contract would be for life or until he decided to retire.  Thus, it could be performed within one year because Mr. Price could have died or could have elected to retire within a year after the alleged contract was made.  The fact that neither contingency occurred is not sufficient to bring the agreement within Tenn.Code Ann. § 29–2–101(5).

It is clear in the case before us that the express terms of the contract render it performable within one year. If the Nashville branch had proved unprofitable after only six months, it would have been closed and Jarrett would have been paid for the following six months as severance pay for his efforts. The fact that this contingency did not occur is, as in *Price*, not sufficient to bring the agreement within the one year proscription of the Statute of Frauds.

We further conclude that the jury could reasonably have found that the agreement survived the Statute under the doctrines of part performance and equitable estoppel. In *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659 (Tenn. 1983), an action remarkably similar to the case before us, the plaintiff employee sued for breach of an oral employment contract. The defendant employer refused to honor its promise to issue stock in the company despite plaintiff's having performed several years of employment in reliance thereon. Plaintiff had suffered the detriment of leaving prior secure employment for a risky venture with defendant, taking a pay cut to do so, and working for several years with repeated assurances that his efforts would net him twenty-five percent of the company's stock. The Supreme Court of Tennessee there held that plaintiff had suffered a detriment amounting to an unconscionable loss by performing his part of the bargain and that the employer would be estopped from relying upon the Statute of Frauds defense.

In Appellants' attempt to distinguish *Blasingame* here, it is argued that Jarrett did not suffer any detriment because United started him at one hundred dollars more per year than his previous employer paid, and gave him regular salary increases thereafter. We disagree. Jarrett testified that, as a district manager he was not simply responsible for managing the Nashville branch, but had supervisory responsibility for the Tampa, Atlanta, and Birmingham branches. He worked many more hours that he had previously and was frequently required to be away from his family. This job, in short, was not a routine responsibility, as he had held with Trans-port Pool. Thus, the jury had ample basis to conclude as it did that the increased compensation was based upon increased responsibilities. Indeed, the compensation might well have been even higher, without a promise of future ownership.

More fundamentally, we disagree with Defendants' assertion that *Blasingame* hinged upon the plaintiff's decrease in pay. Rather, our view of *Blasingame* convinces us that the Court based its result on the plaintiff's giving up of the prior secure employment for a more risky situation, as well as his full performance of very substantial services to the enterprise thereafter, prior to the defendant's breach of promise. Those elements clearly are present in the instant case. Accepting employment with United was a risk for Jarrett, the realization of which was evidenced by the parties having provided for six months severance if the Nashville branch were not profitable. In addition, Jarrett's responsibilities for United included substantial travel, which took him away from his family for days at a time.

More generally, under Tennessee law, a wrongdoer is not permitted to rely on the Statute of Frauds defense. In *Interstate Company v. Bry–Block Mercantile Co.*, 30 F.2d 172, 175 (W.D.Tenn.1928), the Court held that the Statute of Frauds was "enacted for the purpose of preventing fraud, and shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme." And in *Baliles v. Cities Service Co.*, 578 S.W.2d 621, 624 (Tenn.1979), citing the 1928 *Interstate* decision along with a number of earlier decisions, the Tennessee Supreme Court specifically discussed the doctrine of equitable estoppel and its effect on the Statute of Frauds:

> The harshness of this rule [Statute of Frauds] has been mitigated by the application of the doctrine of equitable estoppel in exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression,

verging on actual fraud. [Citations omitted].

We believe that the jury had substantial and material evidence on which to conclude that Jarrett's was one of these exceptional cases in which application of the statute would work an injustice and abet an actual fraud. We will not disturb their finding that Jarrett detrimentally relied on Epperly's promises.[2]

■ Even more basic, however, with regard to the Statute of Frauds is its inapplicability to plaintiff's tort (i.e. fraud) claims. The jury, having granted punitive damages, clearly found for Jarrett on his tort claims, concluding that Epperly's conduct was intentional, malicious and wanton. The application of the Statute of Frauds to the tort of fraudulent misrepresentation was specifically addressed by the Tennessee Court of Appeals in *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228 (Tenn.Ct.App.1976). There, the Court held that the Statute did not preclude a claim for fraud, and rejected the appellant's argument to the contrary as "meritless". *Id.* at p. 231. The Court reasoned that the Statute of Frauds applied only to contract actions, and not to tort claims. We find meritless Defendants' reliance on *Webb v. Shultz,* 184 Tenn. 235, 198 S.W.2d 333 (1946). This, as well as other cases cited by Defendants, involved claims for breach of contract, and not tort claims for fraud. The *Webb* decision antedated the Tennessee Supreme Court's decision in *Blasingame* by more than a quarter of a century, moreover, and the latter decision—which is strikingly close to the instant case on its facts—would control here regardless of what *Webb* said.

## V. JURY INSTRUCTIONS

■ Defendant contends that the trial court erred in rejecting tendered instructions on the Statute of Frauds. This Court has held that the failure to give a tendered instruction is not error where other instructions given by the Court adequately address the same issue. *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1182–1183 (6th Cir.1983); *Mitroff v. Xomox Corp,* 797 F.2d 271, 278 (6th Cir.1986), *Jones v. Consolidated Rail Corp.,* 800 F.2d 590 (6th Cir.1986). Here, because the parties' agreement was undisputedly oral, the jury issue was whether Jarrett's partial performance of the agreement, and his reliance thereon, brought his contract claim within an exception to the Statute of Frauds. The trial court instructed the jury that, to prevail on his contract claim, Jarrett had the burden of proving "that in reliance on the promise of eventual ownership, he altered his position so far as to incur an unjust and unconscionable injury and loss; and ... [t]hat his actions performed pursuant to the alleged promise of eventual part ownership are clearly referable to that promise, rather than to some other reason such as increases in compensation." Because this instruction adequately addressed the factual dispute between the parties relevant to the Defendants' Statute of Frauds defense, the court did not err in refusing Defendants' tendered instructions.

■ Moreover, even if the trial court's instructions as to the Statute of Frauds were erroneous, any such error was clearly harmless, inasmuch as the jury's verdict was also based on Jarrett's fraud claims, which were not subject to the Statute of Frauds defense. *Haynes, supra,* at p. 231.

■ We also conclude that the district court correctly declined to instruct the jury that in a case of promissory fraud, the promisor has an absolute legal right to change his mind. The facts presented at trial did not support such a charge. Defendant apparently claims here that Epperly originally intended to keep his promise, but changed his mind after the business ex-

---

**2.** Before citing the *Interstate* decision as support for applying the equitable estoppel doctrine in *Baliles,* the Tennessee Supreme Court noted that as a rule, "part performance of a parol contract for the sale of land will not take the agreement out of the statute of frauds." 578 S.W.2d at 624. Because the case at bar does not involve a contract for the sale of land, there is no need for us to consider the extent to which the harshness of this rule might be mitigated by the equitable estoppel doctrine if this case, like *Baliles,* had involved a contract for the sale of land.

panded beyond his expectations. At trial, however, Epperly denied that he ever made the promise in the first instance. He never claimed at trial that he had indeed changed his mind. Even though a party's requested jury charge is a correct statement of the law, for the trial court to be held in error for refusing the charge, it must not only be legally correct, but must also be applicable to the facts in evidence. *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn.Ct.App.1980). No error occurred.

■ Defendants next advance the argument that by permitting plaintiff to proceed on the theories of fraudulent concealment and actual fraud, the trial court allowed "trial by ambush". We reject such a contention for the reason that the prior pleadings, as well as the pre-trial proceedings, were sufficient to place defendants on notice of these claims. The evidence in the case remained the same. Defendants show no real prejudice to their trial preparation effort. Accordingly, the district court committed no abuse of discretion by allowing these claims to go to the jury. "[A] claim of surprise that is not borne out by the facts, or an objection to a mere technical addition to the theory of the claim for relief or the facts on which it is based or a change in the nature of the defense typically will not entail sufficient prejudice to warrant the denial of a motion to amend." Wright and Miller, *Federal Practice and Procedure*, § 1495, pp. 478–79. Even at a late stage in the proceedings, parties may amend their pleadings to conform to the proofs and to the findings of fact. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). *See also* 3 J. Moore, Federal Practice ¶ 15.13[2], p. 15–157 (2d ed 1984) (amendment to conform to evidence may be made at any time); *id.*, at 15–168 (Rule 15(b) amendment allowed "so long as the opposing party has not been prejudiced in presenting his case").

## VI.  WAIVER

■ Appellants allege that Jarrett affirmatively waived his claims because he supposedly discovered years in advance of his lawsuit that Epperly did not intend to keep his promise, and therefore should have taken prompt action to rescind the contract. To support these contentions, Appellants rely heavily on statements made by Jarrett at his deposition, inferring that he knew six or seven years before filing suit that Epperly never intended to fulfill his promise. Appellants, however, ignore Plaintiff's affidavit and trial testimony. In his affidavit in opposition to summary judgment, Jarrett averred that the reference to six or seven years "refers to when the Nashville branch stopped using the name United Brake Systems of Tennessee" and not to any such discovery as Defendants claim. In addition, at trial he testified that he did not learn that a corporation entitled United Brake Systems of Tennessee had never been set up by Epperly, as promised, until after his ten years of employment when he consulted legal counsel, who informed him. Significantly, he also testified at trial that when he approached Epperly as his tenth anniversary neared, Epperly promised him stock certificates representing forty-nine percent of the stock of the Nashville branch. Therefore, Defendants' contention that Jarrett affirmatively waived his claims is not supported by the evidence and the jury had substantial and material evidence from which to conclude the contrary.

## VII.  THE GENERAL VERDICT FORM

■ Finally, Defendants object to the form of the verdict submitted to the jury. They argue that it was error to use a general verdict form, rather than a special verdict in the form of interrogatories. However, the form of jury verdict is within the discretion of the trial judge, and is not ordinarily reviewable. *Lummus Industries, Inc., v. D.M & E. Corp.*, 862 F.2d 267 (Fed.Cir.1988); *see also* Fed.R.Civ.P. 49 Commentaries ("It appears that the privilege of calling for a special verdict is not a right to be demanded by the parties but is rather a matter to be determined by judicial discretion.") and *Flanigan v. Burlington Northern Inc.*, 632 F.2d 880 (8th Cir. 1980) *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981) ("The decision

whether to use a general verdict accompanied by special interrogatories ... is similarly committed to the unreviewable discretion of the trial judge."), quoting 9 Wright & Miller, *Federal Practice and Procedure*, Civil § 2511, at 522 (1971).

The jury awarded compensatory and punitive damages. The award of punitive damages supports the conclusion that the jury found a species of fraud. In *Adkins v. Ford Motor Company*, 446 F.2d 1105, 1108 (6th Cir.1971), this Court held:

> Tennessee adheres to the rule that where more than one theory of recovery is submitted to the jury, and there is evidence to support one or more, but not all, of the theories, a general verdict should be construed to be attributable to the theory or theories supported by sufficient evidence and submitted free from error. [Citations omitted].

The trial judge acted within his discretion by submitting the case to the jury through a general verdict form.

The decision of the district court is AFFIRMED.

WELLFORD, Circuit Judge, dissenting:

I dissent from the majority view in this case, and I would reverse and remand the case for the reasons indicated.

As conceded by plaintiff, the alleged agreement between the parties was not in writing and there was no documentary evidence establishing its precise terms. I find the statement by the magistrate in this case to set forth the facts succinctly:

> [W]hen the facts are construed in a light most favorable to Jarrett, as required in consideration of this motion for summary judgment, Jarrett, by his own testimony and the testimony of other employees, has presented sufficient facts to establish an oral agreement between Jarrett and Epperly for Epperly to convey a 49% interest in UBSI's Nashville operation upon Jarrett's successful completion of 10 years employment with Epperly and UBSI. Jarrett testified that Epperly so agreed in 1976 and gave subsequent assurances to Jarrett in the following

years. Other employees described conversations with Epperly in which Epperly acknowledged the agreement. Jarrett left his prior employment to take the position and declined to pursue subsequent employment offers and business ventures in reliance upon Epperly's promise. Although the dollar value of these other offers are [sic] unclear, the length of Jarrett's commitment suggests an unjust loss if the agreement were breached. To be sure, Epperly disputes these facts, but these factual disputes can not be resolved by a motion for summary judgment.

> ... It appears that Jarrett [sic] version of the 1976 agreement include [sic] a subsequent promise to convey the real estate on which UBSI's Nashville branch was located. Of course, UBSI did not acquire ownership of the real estate on which its Nashville branch was located until 1980. However, in his deposition testimony, Jarrett clearly states that this real estate was to be embedded in the agreement.

### STATUTE OF FRAUDS

An oral contract for sale of an interest in land is clearly not enforceable in Tennessee. *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659 (Tenn.1983); *Baliles v. Cities Service Co.*, 578 S.W.2d 621 (Tenn.1979). It is error to rely upon a sixty-one year old district court decision (*Interstate Co. v. Bry–Block Mercantile Co.*, 30 F.2d 172 (W.D.Tenn.1928) to "supercede" the holding of the Tennessee Supreme Court in this regard.

The doctrine of partial performance, relied upon by plaintiff, does not change the rule on sale of real estate in Tennessee. *Blasingame, supra,* n. 2; *Baliles, supra.* The *Blasingame* court specifically noted that a situation where real estate is the subject matter of an oral agreement is distinguishable from a situation which involves the partial performance of a verbal employment contract. 654 S.W.2d at 663.

Plaintiff formally pleaded that real estate was part of the alleged contract upon which he relied:

It was understood by the parties that the forty-nine percent (49%) of the Nashville operation, included inventory, equipment, accounts receivable, accounts payable, business goodwill *and real estate.*

Joint Appendix 21 and 91 (emphasis added).

Plaintiff is suing for the value of real estate assets acquired in 1980 and claims that since there was no real estate involved in 1976 when he made the oral agreement, he is not barred by the Statute of Frauds. Jarrett cannot escape, however, from the fact that he is nevertheless claiming an interest in real estate based on an unenforceable oral agreement. To the extent the district court and the majority have permitted recovery for the value of real estate, contrary to the Tennessee Statute of Frauds as construed by the Tennessee Supreme Court, I am convinced they are in error and to this extent, at least, I would reverse and remand for a redetermination of damages, excluding the value of real estate entirely. This would be the case if the alleged oral contract were deemed to be severable giving plaintiff the benefit of very considerable doubt under *Womble v. Walker,* 181 Tenn. 246, 181 S.W.2d 5 (1944), and *Brockett v. Pipkin,* 25 Tenn.App. 1, 149 S.W.2d 478 (1941).

In sum, then, I dissent from the majority's holding that the Statute of Frauds was inapplicable to the real estate assets claimed by plaintiff. The entire basis for plaintiff's claim is breach of an oral contract, an oral agreement which purportedly included and involved a 49% interest in Epperly's "Nashville operation." The Statute of Frauds is clearly applicable to breach of contract claims as plaintiff admits in his brief, citing *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228 (Tenn. Ct.App.1976) (Appellee's Brief at 11). Later Tennessee Supreme Court cases also make this clear. Plaintiff characterizes in both the complaint and amended complaint that he is suing on a "breach of contract" claim.

## PROMISSORY FRAUD

The other claim asserted by Jarrett in his amended complaint is for promissory fraud.

Plaintiff claims in this regard that defendant Epperly made false representations in the agreement, discussed above, with the idea at the outset to deceive plaintiff, because he had "no reasonable expectation of performing those promises." Plaintiff claims, therefore, that defendant "expected to induce reliance" and did so, causing him "to change his position," and then Epperly "repudiated" the oral agreement to plaintiff's "irreparable detriment." This claim amounts to an alleged oral offer and acceptance by plaintiff and the subsequent failure on the part of defendant-offeror to carry out the parol agreement, his part of the bargain.

The promissory fraud claim should not have been submitted to the jury. The Tennessee Supreme Court has not expressly recognized promissory fraud as a tort in Tennessee. It has not yet found the "right" set of facts to apply such a doctrine. *Fowler v. The Happy Goodman Family,* 575 S.W.2d 496 (Tenn.1978); *Bolan v. Caballero,* 220 Tenn. 318, 417 S.W.2d 538, 541 (1967). The Tennessee Supreme Court has, nevertheless, expressly held that there is no judicial remedy for breach of an oral promise within the statute of frauds even if "the promise [was made] with no intention of complying with it." *Southern States Development Co. v. Robinson,* 494 S.W.2d 777, 782 (Tenn.Ct. App.1972), *cert. denied,* (Tenn.1973) (quoting *Webb v. Shultz,* 184 Tenn. 235, 198 S.W.2d 333, 336 (1946)).

When enforcement of a promise is barred by the Statute of Frauds, a claim for promissory fraud on that same promise is likewise barred. In the *Webb* decision, the Tennessee Supreme Court stated:

In *Hackney v. Hackney,* 27 Tenn. 452, it was held that the fraud which will take a case from the operation of the statute of frauds is not fraud in making the promise with no intention of complying with it; but a fraud by which the reduction of it to writing is prevented, the parties so intending; and the complaining party being induced to believe that it has been done, and this fraud may be perpetrated in two ways—one by signing a false pa-

per, at the same time inducing the belief that it is the true one, and the other by inducing the belief that the paper had been signed when in fact it had not. If there was no intention of reducing the promise to writing, or if there were knowledge that though there was an intention of reducing it to writing, that this had not been done, the promise is void under the statute.

... It is, therefore, clear that a false promise to sign an instrument in the future [or to do any act in the future] is not such fraud as will take the case out of the operation of the statute of frauds.

198 S.W.2d at 336. *Webb* thus distinguished between fraud in the inducement— *e.g.*, having someone sign a false paper— from fraud in factum, such as the fraud alleged in this case in which Jarrett alleges that Epperly had no intention of complying with the promise at the time he made it. While fraud in the inducement will take a case away from the operation of the Statute of Frauds where there was allegedly no intention of ever complying with the promise, "the promise is void under the statute." *Id.* The *Webb* language was quoted with approval by the Tennessee Court of Appeals in *Southern States. See* 494 S.W.2d at 782.

*Southern States* was decided five years *after* the Tennessee Supreme Court discussed the theory of promissory fraud in *Caballero, supra.* Even though the Tennessee Court of Appeals was on notice of the consideration of the concept of promissory fraud by the Tennessee Supreme Court in *Bolan,* it nevertheless recognized that certain oral promises are not actionable regardless of the maker's intent.

The district court should have been guided by those decisions and recognized that submitting the promissory fraud claim to the jury would be contrary to Tennessee law. Neither the magistrate nor the district judge even acknowledged the existence of the *Webb* and the *Southern States* decisions.

The plaintiff has elected first to go forward to sue for a breach of contract and obtain damages for the breach. To the extent he is entitled to recover damages for the oral contract (not involving real estate), plaintiff cannot also claim a recovery for a remedy for promissory fraud saying there was never such an agreement because defendant never intended to perform it. *See Dunham v. Fortner Furniture Co.,* 1987 WL 6372 (Shelby Law No. 99, 2/13/87, Tenn.Ct.App.).

Tennessee appellate courts have not seen fit to allow a promissory fraud recovery for the type of claim made in this case. *Brungard v. Caprice Records, Inc.,* 608 S.W.2d 585 (Tenn.Ct.App.1980), involved a claim for rescission of a contract and for relief based on fraudulent misrepresentation, a different situation from the instant case. The Tennessee Court of Appeals in *Farmers & Merchants Bank v. Petty,* 664 S.W.2d 77, 81 (Tenn.Ct.App.1983), recognized that the Supreme Court of Tennessee has not adopted the doctrine of promissory fraud. In *Fowler,* the Supreme Court of Tennessee stated:

Although a minority view, the rule established by the cases in this state has been that a misrepresentation of intention or a promise without intent to perform is legally insufficient to support a claim for rescission or damages. This rule has been adhered to in a number of decisions, including the fairly recent case of *Bolan v. Caballero.*

*Fowler,* 575 S.W.2d at 499 (citations omitted).

I would agree, therefore, with magistrate William J. Haynes, Jr. in this case that the defendants' Statute of Frauds defense was sound as to "any agreement to convey any interest in the UBSI–Nashville realty," and that the promissory fraud claim simply cannot stand under applicable Tennessee law and the facts of this case.

Jarrett was never denied fair consideration during the time he worked for defendants. He testified that he was "well paid" during this period and was treated fairly during the employment relationship. From the outset defendants paid plaintiff more than he had previously ever been paid and he received regular and generous raises. I find no proven basis for equitable

estoppel to preclude defendants' reliance on the Statute of Frauds. *See Webb, supra; Southern States, supra.*

Giving plaintiff, then, the benefit of doubt about severability of the oral agreement and about application of equitable estoppel in this situation, I would reverse and remand to the district court only for a determination of compensatory damages for the personalty value of the breach of the oral contract I would also reverse and set aside the punitive damages award entirely.