NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0601n.06
Filed: October 6, 2008

Nos. 07-5236, 07-5288, 07-5411

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONALD BARBER, | ) | |
| | ) | |
| Plaintiff-Appellee/ | ) | ON APPEAL FROM THE |
| Cross-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| LOUISVILLE AND JEFFERSON COUNTY | ) | O P I N I O N |
| METROPOLITAN SEWER DISTRICT, | ) | |
| | ) | |
| Defendant-Appellant/ | ) | |
| Cross-Appellee. | ) | |

BEFORE:    GUY, BATCHELDER, and McKEAGUE, Circuit Judges

McKEAGUE, Circuit Judge.        Ronald Barber ("Barber") and the Louisville and

Jefferson County Metropolitan Sewer District ("MSD") both appeal summary judgment orders

entered by the district court during the course of the trial on Barber's First Amendment and state

whistleblower claims. For the reasons stated below, we affirm the district court's orders.

I.

Barber was employed by Rangaswamy & Associates. Through Rangaswamy, Barber was

contracted out to MSD as a construction inspector. MSD supervised Barber and provided all

direction on his projects. Barber inspected MSD construction projects, and his duties included

notifying MSD of nonconformance in those projects.

One of his duties was monitoring "fill dirt" removal. Fill dirt is dirt removed during construction that must be transported elsewhere. Anyone seeking to obtain fill dirt must get a permit to receive the fill dirt. The permit system helped avoid flooding and other forms of damage.

While inspecting an MSD project in 2003 and 2004, Barber allegedly received separate requests for fill dirt from Larry Mattingly, a legislative aide to Louisville Metro Council Member Robert Henderson, and from William Gray, an MSD board member. Mattingly allegedly requested fill dirt and ignored Barber's request for a permit. According to Barber, Mattingly had fill dirt transported to properties owned by Mattingly and other properties owned by Henderson, all without a permit. Gray also allegedly sought fill dirt without a permit.

Barber noted these transgressions on his daily logs and he reported them to his supervisors. He also contacted the MSD Permit Department, where an employee "advised Barber not to lose his job over the permit."

At the same time, Sara Lynn Cunningham ("Cunningham"), an MSD employee, conducted an environmental audit on several projects on which Barber worked. Cunningham found fill dirt problems on Mattingly's property. Cunningham then spoke with Barber and learned of the other alleged fill dirt violations involving Mattingly, Gray, and Henderson. Cunningham informed her supervisor of her concerns and was told the alleged violations were not an issue.

In May 2004, Cunningham sent a letter to the Commonwealth Attorney General, informing him of the alleged improprieties. That letter contained many of the allegations provided by Barber.[1]

---

[1]Cunningham also sued MSD for violations of the First Amendment and the Kentucky Whistleblower Act. Because Cunningham's claim is not part of this appeal, the facts involving her

Before sending the letter, Cunningham called Barber and went over the report with him to verify its accuracy.

Around the same time, MSD prepared for staff reductions. The supervisors involved in the reduction deliberations knew that Barber had reported misconduct by Mattingly, Henderson, and Gray. Barber was ultimately suggested for termination, along with his two supervisors. On December 8, 2004, Barber was fired. Cunningham's supervisor suggested Cunningham for termination as part of the same reduction. Cunningham was terminated on December 7, 2004.

Barber, Cunningham, and Barber's supervisors brought suit in state court in March 2005. As part of this suit, Barber alleged he had been terminated for having "furnished Cunningham with information that she reported to MSD officials, the Attorney General, the Jefferson County Attorney, the Jefferson County Commonwealth's Attorney and the Metro Government Ethics Commission." (Complaint ¶ 9, 12.) Barber and the other plaintiffs brought two causes of action: one under the Kentucky Whistleblower Act ("KWA"), KRS § 61.102, and the other under § 1983 for First Amendment retaliation. (Complaint ¶¶ 16-19.) MSD removed the action to federal court in the Western District of Kentucky. The plaintiffs other than Barber and Cunningham voluntarily dismissed their suits with prejudice.

MSD sought summary judgment against Barber and Cunningham. MSD argued that *Garcetti v. Ceballos*, 547 U.S. 410 (2006), foreclosed Barber's claims. In concluding its argument regarding *Ceballos*, MSD stated that "his Complaint against MSD for retaliation for his 'association with one

---

claim are condensed or omitted unless they bear directly on Barber's appeal.

another for the purpose of exposing public officials' wrongdoing,' (Complaint ¶18), cannot be sustained." Paragraph eighteen of Barber's Complaint articulated the plaintiffs' First Amendment cause of action.[2]

The district court granted summary judgment to MSD on Barber's First Amendment claim, but denied summary judgment on the KWA claim. The district court held that Barber's statements were "pursuant to his official duties" and therefore "not protected speech under the First Amendment." No. 3:05-cv-142-R, 2006 WL 3772209, at * 5 (W.D. Ky. Dec. 20, 2006). On the KWA claim, the district court held:

> Plaintiff's claim under KWA does not require that the statements made by Barber qualify as protected speech, and the Defendant has not presented any evidence that speech by a whistleblower fall under First Amendment protection. As such, the holding in *Ceballos* does not preclude Barber's KWA claim from going forward at this time.

*Id.*

Barber sought to revisit that judgment through a motion to alter or amend the judgment. The district court denied Barber's motion. The KWA claim went to trial, and, on January 24, 2007, a jury found MSD violated the KWA by terminating Barber. The jury awarded Barber $35,000 in damages. Barber then sought attorney fees from MSD, and the district court granted his request.

---

[2]MSD also argued that the KWA claim could not succeed as a matter of law because Barber was not an employee of MSD and that Barber's reports did not involve "illegal activities, misappropriation, fraud, or matters of public concern" and so both the KWA claim and the First Amendment claim should fail. The district court ruled against MSD on both of these arguments, and neither ruling is challenged on appeal.

MSD filed a notice of appeal on February 21, 2007. Barber filed a cross-appeal on March 7, 2007.

**II.**

MSD appeals the denial of summary judgment on Barber's KWA claim after a jury found that MSD violated the KWA by terminating Barber. "[W]here summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990). *Jarrett* adopted the following rationale for the rule: "'[W]e believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial.'" *Id.* at 1016 n.1 (quoting *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352 (9th Cir.1987)).

There is an exception to this rule. Review of the denial is appropriate where the denial involved only a pure question of law. "[W]here the denial of summary judgment was based on a question of law rather than the presence of material disputed facts, the interests underlying the rule are not implicated." *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 441 (6th Cir. 2005); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 572 (6th Cir. 2002). When the denial is based on a pure question of law, it may be appealed even in the absence of a post-judgment motion.[3] *Medshares*, 400 F.3d at 441.

---

[3]Though the Sixth Circuit does provide an exception for reviewing the denial of a motion for summary judgment when it involves a pure question of law, we interpret that exception narrowly. The exception is interpreted narrowly because, as one treatise notes, the exception can undo the carefully calibrated structure of the rules of civil and appellate procedure:

MSD argues that the district court erred on a pure question of law in denying their motion for summary judgment on the KWA claim. The district court denied summary judgment on the KWA claim, holding that "the Plaintiff's claim under KWA does not require that the statements made by Barber qualify as protected speech." 2006 WL 3772209, at *5. MSD seeks to incorporate an official duties exception that courts have read into the federal whistleblower statute, *see Willis v. Dep't. of Agric.*, 141 F.3d 1139, 1144 (Fed. Cir. 1998), into the KWA. While this is a question of statutory interpretation, the argument is contingent on a disputed factual premise. MSD's argument not only requires that the KWA include an official duties exception, it requires that Barber's statements to Cunningham fall within the scope of that imported official duties exception.

The Federal Circuit has articulated the limitations of the official duties exception to whistleblower law: it does not apply when "an employee with such assigned investigatory responsibilities reports the wrongdoing outside of normal channels" or when "the employee is obligated to report the wrongdoing, but such a report is not part of the employee's normal duties." *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1352-54 (Fed. Cir. 2007).

Though the district court found that, as a matter of law, "Barber made his comments to Cunningham pursuant to his duties as a MSD employee," (Op. and Order re Mot. to Alter or Amend

---

[A]fter trial, a judgment as a matter of law may be rendered only on a directed verdict motion or by motion at the end of trial. Absent the appropriate motions, judgment as a matter of law may not be granted. Review of a pretrial summary judgment motion would circumvent that rule; review of a denial of a directed verdict or judgment as a matter of law motion obviates the need for review of a denial of a pre-trial summary judgment.

19 MOORE'S FEDERAL PRACTICE § 205.08[2] (3d ed. 2007).

J. at 3), it did not reach the question critical to the official duties exception. The district court did not find that working on the AG report with Cunningham was within Barber's normal duties or that it was a normal channel for reporting wrongdoing. Indeed, the district court found that Cunningham's report to the Attorney General was outside her official duties. No. 3:05-cv-142-R, 2006 WL 3772206, at *4 (W.D. Ky. Dec. 20, 2006). It thus did not find that Barber's participation in the AG report was part of Barber's official duties in the manner necessary for resolution of MSD's argument as a pure question of law.

Because there is an open factual question which is inextricably tied to the KWA claim, the *Medshares* exception does not apply. Instead, *Jarrett* controls. The district court's denial of MSD's motion for summary judgment may not be appealed.

**III.**

The district court found Barber was entitled to attorneys' fees under K.R.S. § 61.990(4). MSD does not contest either the amount of the fees or the award after verdict. Because the district court's order stands, the award of attorneys' fees also stands.

**IV.**

In his cross-appeal, Barber argues that the district court improperly granted summary judgment to MSD on his First Amendment claim. Barber now claims he can bring a derivative First Amendment retaliation claim because Barber's injury flows directly from the violation of Cunningham's First Amendment rights.

Barber did not adequately notify the district court or MSD of this derivative First Amendment claim. "[V]ague references to an issue fail to clearly present it to the district court so as to preserve the issue for appeal." *Thurman v. Yellow Freight Sys. Inc.*, 97 F.3d 833, 835 (6th Cir. 1997).

The Complaint provides scant notice of the derivative claim. The Complaint focuses on Cunningham's Attorney General report. (*See* Complaint ¶¶ 8-9.) It also states that the relevant acts were "Cunningham's disclosure, and Barber['s] . . . acts in support, aid and substantiation of Cunningham's disclosures." (Complaint ¶ 12.) Under "Causes of Action," however, the Complaint states that MSD had deprived "the plaintiffs of rights secured by the First Amendment." (Complaint ¶ 29.) This suggests that the plaintiffs all had suffered a First Amendment injury.

Barber's response to MSD's motion for summary judgment did not explicitly raise the derivative First Amendment claim, but neither did it foreclose the derivative claim. The response focused entirely on the First Amendment protection for Cunningham's report to the Attorney General. (J.A. at 122-125.) Focusing on Cunningham's report is consistent with the derivative theory now raised on appeal.

Barber's motion to alter or amend the judgment clarifies the contours of his First Amendment claim. Filed a month after the summary judgment order, the motion clearly argues a direct First Amendment theory. The motion states:

> Barber's First Amendment claim hinges on his speech to Cunningham . . . . And that speech is fundamentally different from Barber's daily log report – something that the Court's opinion fails to note. There is nothing in the record to suggest – much less prove for summary judgment purposes – that Barber's job duties included reporting non-environmental wrongdoing to Cunningham.
> For this reason, *Ceballos* does not foreclose Barber's First Amendment claim.

(Mot. to Alter or Amend J. at 2.)

This argument proceeds under *Ceballos*: the First Amendment directly protected Barber's speech outside the scope of his employment. The district court responded in kind, denying the motion on the basis of *Ceballos*: "Barber made his comments to Cunningham pursuant to his duties as a MSD employee . . . Accordingly, the Court did not err in determining that *Ceballos* precluded Barber's First Amendment claim." (Op. and Order re Mot. to Alter or Amend at 3-4.) Barber's counsel also essentially conceded during oral argument before this court that the theory of his First Amendment claim before the district court was direct rather than derivative.

Since Barber did not raise the issue of his derivative claim below, the issue is waived unless we decide to use our discretion to hear the claim:

> In general, this court will not review issues raised for the first time on appeal. Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order. This court will consider an issue not raised below only when the proper resolution is beyond doubt or a plain miscarriage of justice might otherwise result.

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006).

"Two main policies justify this general rule. First, the rule eases appellate review 'by having the district court first consider the issue.' Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (citations omitted).

Addressing the derivative claim for the first time on appeal would be inappropriate under our waiver jurisprudence. Though the validity of a derivative First Amendment claim is a pure question of law, the existence of such a claim is not "clear and beyond doubt." *See Friendly Farms v.*

*Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996). Scattered courts have recognized this type of claim; others have not. *See Horstkoetter v. Dept. of Pub. Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998); *Biggs v. Best*, 189 F.3d 989, 998-99 (9th Cir. 1999); *but see Shondel v. McDermott*, 775 F.2d 859, 864 (7th Cir. 1985). Further, no binding authority opinion from the Supreme Court, Congress, or this circuit has been issued since the district court reached its decision. *Cf. Mayhew v. Allsup*, 166 F.3d 821, 823-24 (6th Cir. 1999); *United States v. Chesney*, 86 F.3d 564, 568 (6th Cir. 1996). This appeal is not the first time Barber could have raised this issue. Nor would reaching the issue aid the progress of litigation; instead, success on the appeal would revoke the finality of the decision below.

As Barber waived the derivative claim by failing to address it below and no factor counsels in favor of reaching the issue for the first time on appeal, we will not upset the district court's summary judgment order regarding Barber's First Amendment claim.

**V.**

Based on the reasons articulated above, neither MSD's appeal nor Barber's cross-appeal is properly before this court. Accordingly, we **AFFIRM** the judgment of the district court.