**NATIONAL ENGINEERING & CONTRACTING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, DEPT. OF LABOR, OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION, Defendant.**

Civ. No. C–1–86–1119.

United States District Court,
S.D. Ohio, W.D.

June 10, 1988.

Kent W. Seifried, Holbrook & Poston, Cincinnati, Ohio, for plaintiff.

Gerald F. Kaminski, Asst. U.S. Atty., Cincinnati, Ohio, for defendant.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon plaintiff's objections to the Order of the Magistrate Lifting the Stay Granted on June 3, 1988 and Motion for a Stay (doc. no. 22). An emergency hearing on the merits of plaintiff's claims was held on June 9, 1988. Both parties have submitted proposed Findings of Fact and Conclusions of Law (doc. nos. 24 and 25).

After hearing the testimony and considering all the evidence submitted, the Court does submit herewith its Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. National Engineering and Contracting Company is a construction company which is presently performing construction work involving encasing the Mill Creek in Cincinnati, Ohio, with concrete for purposes of flood control. This worksite is known as Section 4–A.

2. At the present time, National Engineering is engaged in a concrete pouring operation which involves emplacing concrete on the bottom of the Mill Creek. National Engineering utilizes a boom concrete pump truck to perform this operation. National Engineering's current worksite encompasses an area in length of approximately two city blocks along the Mill Creek, and with a width of approximately two hundred feet.

3. On October 21, 1986, National Engineering was engaged in a concrete pouring operation on this construction job, about two thousand feet upstream from the existing area of National Engineering's pouring operation. An accident occurred when the

boom of the pump truck came into contact with energized overhead lines.

4. Whenever an accident occurs, which involves a "high-hazard industry", OSHA's policy and established procedures call for a comprehensive inspection. All construction operations are identified as "high-hazard industry" because of its high injury and illness rates.

5. OSHA began a mandatory inspection of that work area and that pouring operation on October 23, 1986. Because of the litigation initiated by the plaintiff, OSHA interrupted its own inspection. The inspection did provide OSHA with sufficient information to issue citations against National Engineering on April 20, 1987 alleging violations of OSHA standards applicable to this pouring operation. Subsequently, following a trial that occurred on January 5 and 6, 1988 before the Honorable James Burroughs of the Occupational Safety and Health Review Commission, these Citations were vacated by Judge Burroughs on May 3, 1988.

6. As of April 20, 1987, OSHA had not completed its comprehensive inspection of National Engineering's pouring operation because OSHA voluntarily stayed its inspection until the case filed in the Federal District Court had been fully litigated and decided. National Engineering's complaint was dismissed in the District Court on November 20, 1987, (doc. no. 11). Plaintiff appealed, but voluntarily dismissed the appeal. The case was dismissed by the United States Court of Appeals for the Sixth Circuit on March 15, 1988 (doc. no. 14).

7. On May 3, 1988, the Occupational Safety and Health Administration attempted to complete the comprehensive inspection of National Engineering's pouring operation which had been interrupted by the litigation of this case. The purpose for this inspection was to inspect National Engineering's concrete pouring operation as dictated by agency administrative procedures. OSHA did not seek nor obtain a new warrant for access to conduct such an inspection, but relied on the Court order. National Engineering refused OSHA access to the site.

8. OSHA obtained the consent of the U.S. Army Corps of Engineers to enter the work area to perform a "plain view" inspection. On June 2, 1988, OSHA began an inspection of National Engineering's work area, and specifically, its pouring operation.

9. Before entering National Engineering's work area on June 2, 1988, OSHA did not seek nor obtain a new warrant. OSHA's inspection of National Engineering's work area beginning on June 2, 1988 was pursuant to a general administrative plan.

10. OSHA's comprehensive inspection of National Engineering's work area has occurred on Thursday, June 2, 1988 from approximately 2:45 p.m. until 4:00 p.m.; on Friday, June 3, 1988 from approximately 8:00 a.m. until 9:15 a.m.; on Wednesday, June 8, 1988 for the full day, approximately 8:30 a.m. until 4:00 p.m.; and on Thursday, June 9, 1988 for the full day, approximately 8:30 a.m. until 4:00 p.m. During that time, OSHA has employed up to three different Compliance Officers in this inspection, these being Mr. William Murphy, Mr. John Collier, and Mr. Ralph Cannon.

## CONCLUSIONS OF LAW

1. Although no search warrant or other process is explicitly required by the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 *et seq.*), a search warrant or its equivalent is constitutionally necessary to conduct a *nonconsensual* OSHA inspection. See *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In this case, the equivalent of a warrant, a Court Order (doc. no. 21) issued, after both parties had been afforded the opportunity to brief the matter. (Doc. nos. 15, 16, 17, 19 and 20).

2. A third party can consent to a search of jointly occupied property as long as the third party has "common authority" over the premises. The Corps has given valid third party consent for OSHA to conduct inspection of Section 4–A as specifically encouraged by the Supreme Court. This consensual search does not violate Nation-

al's rights. *J.L. Foti Construction Co., Inc. v. Donovan*, 786 F.2d 714, 717 (6th Cir.1986) *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *United States v. Sumlin*, 567 F.2d 684 (6th Cir.1977) *cert denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

3. In *Marshall v. Barlow's, supra*, the United States Supreme Court stated:

Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S. [523] at 538, 87 S.Ct. [1727] at 1736 [18 L.Ed.2d 930 (1967) ].

Further, the Occupational Safety and Health Act "authorizes two types of inspection: an inspection pursuant to a general administrative plan, 29 U.S.C. Section 657(a); and an inspection pursuant to an employee complaint, 29 U.S.C. Section 657(f)". *Donovan v. A.A. Beiro Construction Co., Inc.*, 746 F.2d 894, 898 (D.C.Cir. 1984); *See* also *J.L. Foti Constr. Co. v. Donovan*, 786 F.2d 714, 716 (6th Cir.1986). OSHA's inspection of National Engineering's work area was pursuant to a general administrative plan.

4. The accident which occurred on October 21, 1986 triggered the administrative policy of OSHA's requiring comprehensive inspection of National Engineering's present work area begun on June 2, 1988, pursuant to the Court Order.

5. The Magistrate's Order of March 11, 1987, which was subsequently affirmed by this Court, permitted OSHA to complete its inspection of National Engineering's work area within six months from the date of that order. The Court finds that the Magistrate has correctly and reasonably interpreted his own order as approved by this Court. The Magistrate has found that OSHA may inspect Section 4–A within six months of March 14, 1988, when National's appeal was dismissed before the Court of Appeals and the Order of March 11, 1987 became a final order.

6. OSHA had not completed its comprehensive investigation of National Engineering's pouring operation as of April 20, 1987 when it issued its Citation to National Engineering alleging violation of OSHA's standards. This Court will not penalize a party for voluntarily suspending its administrative procedure pending termination of litigation involving the validity of that procedure. But for the plaintiff's filing of this lawsuit, the inspection would have been completed within a short period after the accident which triggered it, pursuant to administrative procedures.

## CONCLUSION

The Court finds that the inspection now being conducted is reasonable under the holding of *Marshall* because it was pursuant to an administrative standard procedure and the Court Order—the equivalent of a warrant. Further there was valid consent to the "plain view" inspection now being conducted, as found by the Magistrate and approved by this Court.

The plaintiff's Motion is hereby GRANTED to the extent that OSHA shall be allowed only to complete the standard administrative "plain sight" search interrupted by the filing of this lawsuit, in that the inspection shall not exceed five days in duration and shall proceed in accordance with normal "plain sight" procedures.

The Magistrate's Order of June 7, 1988 (doc. no. 21) is AFFIRMED and adopted as the ORDER and JUDGMENT of this Court, after an evidentiary hearing on the merits.

IT IS SO ORDERED.