928 F.2d 762
 59 USLW 2612, 14 O.S.H. Cas.(BNA) 2162,
1991 O.S.H.D. (CCH) P 29,272
 NATIONAL ENGINEERING & CONTRACTING COMPANY, and Meroe
Contracting & Supply Company, Petitioners,
v.
OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION, U.S. DEPARTMENT
OF LABOR, Respondent.
 No. 90-3080.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 4, 1991.
Decided March 25, 1991.
 
 Kent W. Seifried (argued), Holbrook & Poston, Cincinnati, Ohio, for petitioners.
 Barbara A.W. McConnell, Ann Rosenthal (argued), and Cynthia Attwood, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent.
 Before RYAN and SUHRHEINRICH, Circuit Judges, and SILER, Chief District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 National Engineering and Contracting Company and Meroe Contracting and Supply Company seek a petition for review of an order of an Occupational Safety and Health Review Commission ("OSHRC") judge that National and Meroe violated certain sections of the Occupational Safety and Health Act of 1970, 29 U.S.C. Sec. 651 et seq. National and Meroe raise the following issues on appeal:
 
 
 2
 1. Whether the evidence found by the Occupational Safety and Health Administration ("OSHA") during the inspection of National's and Meroe's work site should be excluded because OSHA violated the companies' constitutional rights by extending their inspection beyond the "plain view" limits imposed by the court.
 
 
 3
 2. Whether substantial evidence supports the review commission judge's decision that National and Meroe violated various standards of the Act.
 
 
 4
 3. Whether the judge erred in failing to grant National's and Meroe's motions for summary judgment.
 
 
 5
 We conclude that the review commission judge properly decided all of these matters and the petition to review should be denied.
 
 I.
 
 6
 National is a construction company which was under contract to the U.S. Army Corps of Engineers from 1986-1988 to construct a flood control project on Mill Creek in Cincinnati, Ohio. Meroe, a subsidiary of National, was a sub-contractor on this job at the time the inspection occurred.
 
 
 7
 On October 21, 1986, an accident occurred on the site when the boom of a concrete pump truck operated by a National employee contacted an energized overhead power line. Because OSHA's policies and procedures require a comprehensive inspection whenever an accident occurs in a "high hazard" industry such as construction operations, OSHA, with the consent of the Army Corps of Engineers, began an inspection of the site on October 23, 1986.
 
 
 8
 OSHA officials did not complete their comprehensive inspection at this time because National Engineering obtained a stay of the inspection on October 24, 1986. This stay was lifted on March 11, 1987. On April 20, 1987, OSHA issued citations against National but an administrative law judge vacated these citations on May 3, 1988.
 
 
 9
 OSHA then voluntarily stayed the investigation until the resolution of National's litigation challenge to the Corps' authority to consent to an inspection and OSHA's authority to inspect a project supervised by the Corps. On November 20, 1987, the district court dismissed National's complaint. National appealed but voluntarily dismissed the appeal on March 15, 1988.
 
 
 10
 On May 3, 1988, OSHA attempted to complete its comprehensive inspection. It did not seek or obtain a new warrant for access to the job site to conduct the inspection but instead relied on the court order. National refused OSHA access, but the inspection was conducted nevertheless when OSHA again obtained the consent of the Army Corps of Engineers and secured an order from the United States District Court allowing a "plain view" inspection within five days. National Eng'g & Contracting Co. v. United States Dep't of Labor, 687 F.Supp. 1219 (S.D. Ohio 1988). This court affirmed the district court's order on May 8, 1990, National Eng'g & Contracting Co. v. United States Dep't of Labor, 902 F.2d 34 (table) (6th Cir. May 8, 1990) (unpublished slip op. at Nos. 88-3612, 88-3721), cert. denied, --- U.S. ----, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990).
 
 
 11
 Following its inspection, OSHA issued citations alleging that both Meroe and National were liable for each of six "serious" violations of mandatory safety standards promulgated under the OSH Act. National was also charged with seven other serious and one "nonserious" violation. The compliance officers found some of these violations to be obvious, but other violations were apparent only after the compliance officers' initial observations led them to look more closely at equipment or to question employees.
 
 
 12
 National and Meroe contested these citations in a hearing before an OSHRC judge. The Commission judge held that OSHA conducted a proper inspection of the site based on the Corps' sufficient consent and the compliance officers' permissible "plain view" procedures. The judge further found that National had committed eight of the "serious" violations and one "nonserious" violation, and that Meroe had committed five of the six cited violations.
 
 II.
 A. Constitutionality of the Inspection
 
 13
 Because the appellants appeal from a denial of a motion to suppress, we must consider the evidence in the light most favorable to the government. United States v. Oates, 560 F.2d 45, 49 (2d Cir.1977). OSHA authorizes two types of inspections: an inspection pursuant to a general administrative plan, 29 U.S.C. Sec. 657(a), and an inspection pursuant to an employee complaint, 29 U.S.C. Sec. 657(f). Because the accident of October 21, 1986, triggered OSHA's administrative policy of inspecting accident sites, this inspection was conducted, pursuant to a general administrative plan. National Eng'g, 687 F.Supp. at 1222. The inspection case did not require a warrant because OSHA was acting with the Corps' consent. See Marshall v. Barlow's, Inc., 436 U.S. 307, 316, 98 S.Ct. 1816, 1822, 56 L.Ed.2d 305 (1978); Donovan v. A.A. Beiro Constr. Co., 746 F.2d 894, 898 (D.C.Cir.1984). The Corps, as the contractor of a multi-employer construction site, "possessed common authority over ... the premises or effects sought to be inspected" and thus could validly consent to OSHA's inspection. Beiro, 746 F.2d at 898 (quoting United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974)).
 
 
 14
 In ordering the inspection, the district court stated that: "OSHA shall be allowed only to complete the standard administrative 'plain sight' search interrupted by the filing of this lawsuit, in that the inspection shall not exceed five days in duration and shall proceed with normal 'plain sight' procedures." National Eng'g & Contracting Co. v. United States Dep't of Labor, 687 F.Supp. at 1222. No other limitations were placed on the inspection. Elsewhere in its opinion the court referred to OSHA's obligation to conduct "a comprehensive inspection" whenever an accident occurs in a "high hazard industry," such as construction, and that because of the pending litigation, OSHA had not completed this mandatory "comprehensive inspection" until June 1988. Id. at 1221.
 
 
 15
 Although the district court referred to "the standard administrative 'plain sight' search" and "normal 'plain sight' procedures," neither the Act nor its regulations refer to "plain view" or "plain sight" inspections or procedures. The "plain view" doctrine, developed by the Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), provides that an official who is otherwise authorized to search an individual's property may further inspect, without a warrant, those matters which he can plainly view. The plain view doctrine "may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge, 403 U.S. at 466, 91 S.Ct. at 2038. Recently, the Supreme Court further limited this doctrine by requiring police to have probable cause to believe that the item in question is evidence of a crime. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In Hicks, a police officer, while searching an apartment in response to reports of gunfire, suspected that a stereo was stolen and lifted it slightly to observe and record the serial numbers. The court held that such a separate search, involving the moving, touching, or further inspection of equipment, was unjustified unless the officer had probable cause to believe that the stereo was stolen. Based on this case, the appellants argue that the compliance officers overstepped the scope of the ordered inspection.
 
 
 16
 The appellee, the Secretary of Labor, argues that the compliance officers adhered to the law regulating OSHA plain view searches. The district court's order referred interchangeably to OSHA's authority to conduct "plain view" and "comprehensive" searches. The court imposed no specific restrictions on the inspection aside from the five-day limitation. The Secretary contends that the court's "plain view" language
 
 
 17
 was an expression of the practical limits of third party consent. The basis for accepting such consent is the judicial recognition that parties do not have a reasonable expectation of privacy in premises that they share with another, particularly as to items or conditions in plain view within those premises.
 
 
 18
 The D.C. Circuit's opinion in Beiro, 746 F.2d 894, supports the Secretary's approach. In Beiro, a case also dealing with the legitimacy and scope of an OSHA general administrative search conducted pursuant to third party consent, the D.C. Circuit stated that "[t]here are limits on searches or inspections authorized by third party consent. While authority to consent to the search of a common area extends to most objects in plain view, it does not automatically extend to the interiors of every enclosed space within the area." Beiro, 746 F.2d at 901-02. In the search at issue in Beiro, the compliance officers spoke with employees to confirm that a truck seat belt was inoperable, closely inspected a drill cord to note the inspection dates on the cord's colored tape, and tested an extension cord to confirm ineffective grounding. Id. at 902-03. These actions resemble those complained of in the present case: testing a cord to confirm reverse polarity, measuring a readily observable cut in an extension cord, and interviewing a worker regarding the hazard caused by the abrasion on the extension cord. Like the inspectors in Beiro, these compliance officers tested equipment and interviewed employees to confirm and document plainly observable violations. As the D.C. Circuit commented:
 
 
 19
 All of the equipment, here at issue, was in use in the open construction site. Areas of privacy exempted from third party consent have generally involved enclosed or secured places commonly used for preserving privacy. Beiro can hardly claim such an expectation of privacy in equipment being openly used on a large, multi-employer construction site. Furthermore, OSHA's right to inspect must necessarily include some right of closer examination once an observation is made which justifies a reasonable suspicion that a violation exists.... The effectiveness of OSHA inspections would be largely eviscerated if compliance officers are not given some nominal right to follow up on observations of potential violations.
 
 
 20
 Id. at 903. Although no case in the Sixth Circuit has followed the approach taken by the D.C. Circuit in Beiro, we believe its logic applies to the present case.
 
 
 21
 The appellants, however, argue that Arizona v. Hicks, a subsequent Supreme Court case, not Beiro, should control. Hicks, though, involved a criminal case, governed by different standards than administrative inspections. As the Supreme Court explained in discussing the issuance of OSHA warrants:
 
 
 22
 Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting ... an inspection are satisfied with respect to a particular [establishment]."
 
 
 23
 Marshall, 436 U.S. at 320, 98 S.Ct. at 1824 (quoting Camara v. Municipal Court, 387 U.S. 523, 538, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967)). Moreover, moving the stereo in Hicks constituted "a 'search' separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of the officers' entry into the apartment" and thus produced "a new invasion of ... privacy unjustified by the exigent circumstance that validated the entry." Hicks, 480 U.S. at 324-25, 107 S.Ct. at 1152-53. In the present case, closer examination of the equipment and speaking with employees was directly "[ ]related to the objectives of the authorized intrusion," Id. at 325, 107 S.Ct. at 1152, and within the "wall-to-wall" scope of administrative plan inspections. See Marshall v. North American Car Co., 626 F.2d 320, 323 (3rd Cir.1980). Thus, although we believe it is a close case, we conclude, as did the lower court, that the officers did not impermissibly extend the scope of the inspection.
 
 
 24
 B. Substantiality of the Evidence Supporting the Various Violations
 
 1. Standard of Review
 
 25
 In a case of this kind, a reviewing court's task is limited to determining whether the Commission's factual findings are supported by substantial evidence in the record taken as a whole, 29 U.S.C. Sec. 660(a), and whether its legal conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. Sec. 706(2)(A). In making these determinations, the court should accord great deference to an expert agency's construction of the statute it administers, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), and to the credibility findings made by the administrative law judge, Beavers v. Secretary of Health, Educ., and Welfare, 577 F.2d 383, 386 (6th Cir.1978).
 
 2. Legal Framework of OSHA Proceedings
 
 26
 The OSH Act requires that "[e]ach employer ... shall comply with ... standards promulgated under this chapter." 29 U.S.C. Sec. 654(a)(2). To promote this remedial purpose of the statute, the Act and regulations must be liberally construed so as to afford workers the broadest possible protection. Whirlpool Corp. v. Marshall, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980). The Secretary establishes a violation of the Act's safety standards by proving that the standard applies to the cited conditions, the employer is not in compliance, and the employees were exposed to the hazard. Quality Stamping Prods. v. OSHRC, 709 F.2d 1093, 1099 (6th Cir.1983). To establish a "serious" violation, the Secretary must also show a substantial likelihood that an employee could suffer death or serious injury if an accident occurred because of the violation and that the employer knew, or with reasonable diligence could have known, of the violation. 29 U.S.C. Sec. 666(k); Modern Drop Forge Co. v. Secretary of Labor, 683 F.2d 1105, 1112 (7th Cir.1982).
 
 
 27
 The necessary showing that a particular standard applies depends upon the type of standard. Some standards, such as 29 C.F.R. Secs. 1926.300(a), .450(a)(1), and .602(a)(3)(i), require the Secretary to show that a hazard exists and that a reasonably prudent and safety-conscious employer would realize the cited condition is hazardous. Ray Evers Welding v. OSHRC, 625 F.2d 726, 731 (6th Cir.1980). Most standards, however, only require the Secretary to show that the employer has not complied with their terms. Bunge Corp. v. Secretary of Labor, 638 F.2d 831, 835 (5th Cir.1981).
 
 
 28
 In this case, whether the cited conditions existed is not in dispute. The appellants do not contest the existence of the cited condition. They argue, however, that the conditions do not violate OSHA's standards because their equipment, despite the conditions, is safe for employee use. The expert agency's interpretation of the statute, not the employer's interpretation, is entitled to great deference. Chevron, 467 U.S. at 844, 104 S.Ct. at 2782. Moreover, as we have said, the Act should be read broadly to afford workers the broadest possible protection. Whirlpool, 445 U.S. at 13, 100 S.Ct. at 891. Since the Secretary has shown the existence of the cited conditions, a failure of the employer to comply with the Act, and employee exposure to the hazard, National and Meroe cannot escape liability by claiming that they do not believe their failure to comply with the language of the regulations constitutes a violation.
 
 C. Denial of Summary Judgment
 
 29
 Finally, the appellants contend that OSHRC erred by denying their motion for summary judgment. On appeal, the standard for reviewing this denial is whether the court abused its discretion in denying the motion. Pinney Dock & Trans. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Upon review of agency decisions, the appellate court may hold that the agency abused its discretion if no evidence supports the decision, or if the agency misapplied the law. Oakland County Bd. of Comm'rs v. United States Dep't of Labor, 853 F.2d 439, 442 (6th Cir.1988). In this case, we do not believe that the agency abused its discretion in denying the summary judgment motion.
 
 
 30
 First, the Secretary makes a strong argument that any review of the denial is mooted by the subsequent full trial of the matter. In 1990, our circuit held that "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." Jarrett v. Epperly, 896 F.2d 1013, 1016 (6th Cir.1990). The appellants correctly point out that the facts of Jarrett differ from the present case: Jarrett involved the appellate review of a jury verdict following a pretrial ruling denying a motion for summary judgment, not, as in the present case, "an administrative hearing before an administrative law judge who had expressly reserved his ruling on the motion for summary judgment." It is not clear to us, however, why these differences are significant. The decision in Jarrett rested on logic which seems applicable to this case: "we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment demonstrated the need for a trial." Jarrett, 896 F.2d at 1016 n. 1 (quoting Locricchio v. Legal Services Corp., 833 F.2d 1352, 1359 (9th Cir.1987)). This logic does not seem to be disturbed by the different factual circumstances under which the case arose.
 
 
 31
 Second, despite the appellants' argument to the contrary, it appears that the Secretary carried her burden of showing by "depositions, answers to interrogatories, and admissions on file" that "specific facts show ... a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). Although the Secretary's response to the appellants' motions for summary judgment could have designated such facts in greater detail and at times simply states that she will show evidence supporting her differing position at trial, she does point to specific deposition testimony and alleges specific facts which show the existence of a genuine material dispute concerning the existence of the violations.
 
 III.
 
 32
 For the forgoing reasons, the Commission's final order is AFFIRMED.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky, sitting by designation