**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0361n.06
Filed: May 25, 2007

**No. 06-4229**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

KOKOSING CONSTRUCTION COMPANY,
INC.,

     **Petitioner,**

v.

OCCUPATIONAL SAFETY AND HAZARD
REVIEW COMMISSION; ELAINE L. CHAO,
Secretary of Labor,

     **Respondents.**

_____/

ON APPEAL FROM A DECISION BY
THE OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION

BEFORE:    SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

    **CLAY, Circuit Judge.**  Petitioner Kokosing Construction Company, Inc. ("Kokosing" or "Petitioner") petitions this Court to vacate the order of the Occupational Safety and Health Review Commission ("OSHRC") on the grounds that there was not substantial evidence on the record supporting OSHRC's finding that Petitioner committed a serious violation of 29 C.F.R. § 1926.405(a)(2)(ii)(I) and levying a $1,875.00 fine. For the reasons set forth below, we **ENFORCE** the order of OSHRC.

**BACKGROUND**

This appeal stems from an accident that occurred at Kokosing Construction Company's Cincinnati site when a construction crew attempted to install an underground sewer line. The project required the crew to excavate deep trenches in sandy soil. In order to do this, the workers used well de-watering pumps and hoses to extract the water from the trenches. This required the use of portable generators to power the pumps, which were connected to the pumps via construction grade electrical cords. The crew used wire chokers to pull heavy equipment along the site. On September 7, 2004, Foreman Brad Rice observed two extension cords and two water discharge hoses laying on top of a wire choker. Rice asked Hurd to assist him in removing the choker. Wearing no protective equipment, Rice and Hurd each lifted one end of the choker and one of the discharge hoses and pulled the choker from underneath the pile. However, because there was a wire prong sticking out of the mid-section of the choker, it pierced one of the extension cords and resulted in both Rice and Hurd suffering electrical shocks.

On September 8, 2004, the Occupational Safety and Health Administration conducted an inspection and investigation in response to the accident and issued a citation for a serious violation of 29 C.F.R. § 1926.405(i)(2)(ii), which Kokosing contested. The case was assigned to an administrative law judge ("ALJ") and a hearing was set for January 21, 2005. Subsequently, the Secretary submitted a motion to amend the citation to allege, in the alternative, a violation of 29 C.F.R. § 1926.405(a)(2)(ii)(I), which was granted.

The ALJ concluded that the citation was properly issued because Rice had actual knowledge of the risk of an electrical shock occurring, which could, in turn, be imputed to Kokosing. Kokosing petitioned to the OSHRC to review this decision. The OSHRC concluded that, while Rice did not

have actual knowledge of the risk, he had constructive knowledge, which was sufficient to support the citation issued. Kokosing appeals this decision.

## DISCUSSION

**I.** **There is substantial evidence supporting the decision of the OSHRC and the decision was not arbitrary or capricious.**

### A. Standard of Review

We review the factual findings of the OSHRC for substantial evidence. *Bush & Burchett, Inc. v. Reich*, 117 F.3d 932, 935 (6th Cir. 1997). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Dow Elastomers, L.L.C. v. NLRB*, 296 F.3d 495, 500 (6th Cir. 2002). Additionally, we will uphold the legal conclusions of the OSHRC unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994) ("the APA"); *see also National Engineering & Contracting Co. v. Occupational Safety and Health Administration*, 928 F.2d 762 (6th Cir. 1991).

### B. Analysis

According to 29 C.F.R. § 1926.405(a)(2)(ii)(I), "[f]lexible cords and cables shall be protected from damage. Sharp corners and projections shall be avoided. Flexible cords and cables may pass through doorways or other pinch points, if protection is provided to avoid damage." Further, "[t]he OSH Act requires that 'each employer . . . shall comply with . . . standards promulgated under this chapter.'" *Nat'l Eng'g & Contracting Co. v. OSHA, U.S. Dep't of Labor*, 928 F.2d 762, 767 (6th Cir. 1991) (quoting 29 U.S.C. § 654(a)(2)) (alterations in original).

*National Engineering and Contracting Company* describes when a violation of industry safety standards are established:

> The Secretary establishes a violation of the Act's safety standards by proving that the standard applies to the cited conditions, the employer is not in compliance, and the employees were exposed to the hazard. To establish a 'serious' violation, the Secretary must also show a substantial likelihood that an employee could suffer death or serious injury if an accident occurred because of the violation and that the employer knew, or with reasonable diligence could have known, of the violation.

*Id*. at 767. Petitioner argues that the OSHRC erred in imputing constructive knowledge to Petitioner. We have consistently held that as long as the Secretary can prove that knowledge of a risk could have been obtained "with the exercise of reasonable diligence," a supervisor is considered to have constructive knowledge. *Carlisle Equip. Co. v. United States Sec'y of Labor*, 24 F.3d 790, 793 (6th Cir. 1994). We have additionally held that knowledge of a supervisor may be imputed to the company. *Donovan v. Capital City Excavating Co.*, 712 F.2d 1008, 1010 (6th Cir. 1983); *see also Pride Oil Well Service*, 15 OSHC (BNA) 1809, 1819 (1992) ("The actual or constructive knowledge of the employer's foreman or supervisor can be imputed to the employer."). Thus, Petitioner may only succeed by showing that there was not substantial evidence proving that Rice could have discovered the hazard though the exercise of reasonable diligence.

"Reasonable diligence involves several factors, including an employer's 'obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence.'" *Pride Well*, 15 OSHC (BNA) at 1820 (quoting *Frank Swidzinski Co.*, 9 OSHC (BNA) 1230, 1233 (1981)). In the instant case, Rice testified that he knew of the possibility of a hazardous situation arising from the positioning of the equipment. Additionally, Rice admitted

that even though the choker was old and he was unaware of how much stress had been put on it, he did not check it for abrasions before he instructed Hurd to assist him in moving it. When asked how he has been taught to protect electrical cords from being cut, he admitted that they should be kept away from sharp metal. The OSHRC drew the logical inference from this testimony that Rice knew there was a possibility that an old and worn choker like this one had abrasions that could pierce an electrical cord, and that such an occurrence would present a hazard. By failing to check for such abrasions or even instruct Hurd to wear gloves before handling the choker, Rice failed to take incredibly simple actions to prevent the hazard.

Additionally, safety officer John Collier testified that he could tell from merely looking at a picture of the choker Rice and Hurd were injured trying to retrieve that it was damaged, and that the damage should have been obvious to anyone who examined the choker. Thus, there is substantial evidence on the record to show that reasonable diligence would have revealed the hazard and, accordingly, Rice had constructive knowledge of it, which can be imputed to Kokosing.

Kokosing alternatively argues that the OSHRC's decision was arbitrary and capricious. In determining whether an agency decision is arbitrary or capricious in violation of the APA, we presume that the agency complied with the law, and the burden falls to Petitioner to show otherwise. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-17 (1971). In the instant case, Petitioner's sole and extremely cursory argument that the decision is arbitrary and capricious is an incorporation of its previous argument that there is no record evidence supporting the OSHRC's findings. We were not persuaded by Petitioner's initial argument, and we are equally unpersuaded by this one. Accordingly, we find that the OSHRC's finding was neither arbitrary nor capricious.

5

## CONCLUSION

For the forgoing reasons, we **ENFORCE** the order of the OSHRC in full.